01-1941
RHK/JSM

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 03-2554

---

| | | |
|---|---|---|
| Robert E. Mattke; Sherry Mattke, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Claude Deschamps, M.D., | * | |
| individually and in his professional | * | |
| capacity; Clayton Cowl, M.D., | * | Appeal from the United States |
| individually and in his professional | * | District Court for the |
| capacity, | * | District of Minnesota. |
| | * | |
| Defendants, | * | |
| | * | |
| Mayo Clinic, Rochester; The Mayo | * | |
| Foundation, | * | |
| | * | |
| Defendants - Appellees. | * | |

---

Submitted: March 8, 2004
Filed: July 8, 2004

---

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit Judges.

---

COLLOTON, Circuit Judge.

SCANNED
U.S. DISTRICT COURT MPLS

Robert and Sherry Mattke appeal two decisions of the district court[1] in this diversity case arising out of alleged medical negligence. First, the Mattkes appeal the district court's adverse grant of judgment as a matter of law on their claim based on the doctrine of *res ipsa loquitur*. Second, they appeal the district court's jury instruction prohibiting the jury from basing a finding of negligence on the actions of Mayo Clinic's pathology department. We affirm.

I.

Appellant Robert Mattke was referred to Mayo Clinic in Rochester, Minnesota, by his family physician after he had been coughing up blood for several months. Mr. Mattke had been a heavy smoker for fifty years, until quitting in 1992. He had also been exposed to asbestos. A CT scan performed on October 26, 1999, at Mayo Clinic revealed a mass in the upper lobe of Mr. Mattke's right lung. A Mayo Clinic physician performed a biopsy of the lung two days later, and tissue samples collected during the biopsy were reviewed by two Mayo pathologists. Both pathologists diagnosed Mr. Mattke with adenocarcinoma of the lung, a form of cancer. Based on Mr. Mattke's medical history and the pathology report, a team of Mayo Clinic doctors recommended that Mr. Mattke undergo surgery to remove the mass. Mr. Mattke agreed, and on November 1, 1999, a surgeon removed the upper right lobe of Mr. Mattke's lung. Extensive tests performed on the removed section of lung indicated that Mr. Mattke did not, in fact, have cancer. Rather, Mr. Mattke's lung contained an abscess caused by infection, a non-emergent condition that could have been treated without surgery.

Mr. Mattke and his wife brought a diversity action in the district court, alleging claims based on medical malpractice, *res ipsa loquitur*, respondeat superior, and loss

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

of consortium. The Mattkes did not bring claims based on a breach of warranty or guarantee, or negligent non-disclosure of risk. At trial, appellees Mayo Clinic and Mayo Foundation (collectively "Mayo Clinic" or "Mayo") presented evidence that the misdiagnosis of Mr. Mattke's tissue samples occurred because of a phenomenon known as cellular floaters. Mayo's evidence indicated that this phenomenon occurs when cells from one patient become mixed with tissues samples of another patient during the processing of the tissue samples in the pathology laboratory.

Evidence presented to the jury by Mayo indicated that cellular floaters are a rare but "inevitable" occurrence in modern pathology laboratories. A study by the College of American Pathologists showed that floaters occur on approximately one out of every 100 slides, but are rarely problematic, because the floaters generally are of a different tissue type than the cells under examination. For example, muscle cells appearing on a brain tissue biopsy slide often are easily distinguished by a pathologist. On one out of 1,000 slides -- ten percent of slides with floaters -- the contaminant cells will be cancerous. The evidence presented showed that on six out of 100,000 slides, these cancerous floater cells will be "mimics," that is, cells that are of the same tissue type as the biopsy tissue. Mayo Clinic presented evidence that these cancerous "mimics" cannot be detected or prevented, and can cause errors in diagnosis.

The district court granted Mayo's motion for judgment as a matter of law on the Mattkes' *res ipsa loquitur* claim, finding that the Mattkes had failed to present evidence that cellular floaters generally do not occur absent negligence. The district court also instructed the jury that conduct of the Mayo pathologists could not form the basis for a determination that Mayo Clinic was negligent, because no standard of care, or a departure from such standard, had been established with respect to the pathology department. Because this is a diversity suit, we apply the substantive law of the forum state, which is Minnesota. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

II.

A.

On appeal, the Mattkes claim that the district court erred in granting Mayo's motion for judgment as a matter of law on the Mattkes' *res ipsa loquitur* claim. "We review a district court's grant of judgment as a matter of law *de novo*, applying the same standard as the district court." *Anderson v. Independent Sch. Dist.*, 357 F.3d 806, 809 (8th Cir. 2004). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Fed.R.Civ.P. 50(a). We draw all reasonable inferences in favor of the non-moving party, and do not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

*Res ipsa loquitur* is a Latin phrase meaning "[t]he thing or situation speaks for itself." *Hestbeck v. Hennepin County*, 212 N.W.2d 361, 365 (Minn. 1973). Under Minnesota law, a plaintiff wishing to submit a *res ipsa loquitur* claim to a jury needs to prove three things: "(1) that ordinarily the injury would not occur in the absence of negligence; (2) that the cause of the injury was in the exclusive control of the defendant; and (3) that the injury was not due to plaintiff's conduct." *Hoven v. Rice Mem'l Hosp.*, 396 N.W.2d 569, 572 (Minn. 1986). A plaintiff must present evidence supporting application of the doctrine before a jury may be instructed on *res ipsa loquitor*. *Weiby v. Wente*, 264 N.W.2d 624, 629 (Minn. 1978); *see also Hoven*, 396 N.W.2d at 571-72 (where plaintiff did not present evidence that his nerve injury did not normally occur absent negligence, trial court properly refused to submit *res ipsa loquitur* claim to jury).

Expert medical testimony is not necessary to support a *res ipsa loquitur* claim where "the matters to be proved fall within an area of common knowledge and

developing lay comprehension of medical techniques and where the results of surgical or medical treatment, viewed in the light of all the circumstances, provide a sufficient evidentiary basis to support an inference of negligence." *Hestbeck*, 212 N.W.2d at 364. The district court found that "[t]his case, which involves the internal workings of the pathology lab, clearly falls outside" an area of common knowledge. (Tr. 417). The court further found that the Mattkes had failed to present evidence from which a jury reasonably could conclude that what happened in Mayo Clinic's pathology laboratory must have been caused by negligence. We agree with the district court.

At trial, a pathologist with Mayo Clinic testified that cellular floaters cannot be prevented and can cause diagnostic error. He testified that he believed Mr. Mattke was misdiagnosed because of this unpreventable phenomenon. Because the Mattkes did not present any evidence contradicting Mayo Clinic's cellular floater evidence, the uncontroverted evidence at trial was that cellular floaters are not preventable and can cause diagnostic error. In other words, the Mattkes presented no evidence that cellular floaters ordinarily do not occur in the absence of negligence. As the district court noted, "the evidence before the Court indicates only the reverse." (Tr. 417).

Without expert testimony indicating that cellular floaters normally do not occur without negligence, the Mattkes' claim of *res ipsa loquitur* should have been submitted to the jury only if it involved "an area of common knowledge and developing lay comprehension." *Hestbeck*, 212 N.W.2d at 364. It did not. This is not the type of situation that has been held to be within an "area of common knowledge" by the Minnesota Supreme Court. In fact, that court has held specifically that a claim involving pathological diagnosis "is distinctly not the kind of case where the negligence 'speaks for itself' without expert medical opinion, such as where a surgeon leaves a sponge in the body or where there is unexplained injury to a healthy part of the body remote from the treatment area." *Todd v. Eitel Hosp.*, 237 N.W.2d 357, 361 (Minn. 1975); *see also Hestbeck*, 212 N.W.2d at 364; *Schulz v. Feigal*, 142

N.W.2d 84, 88-89 (Minn. 1966) (claim based on *res ipsa loquitur* appropriate where physician mistakenly injected patient's heart with adrenalin); *Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn. 1980) (*res ipsa loquitur* did not apply because "the injury-producing event involves complex questions of the effect of certain medical treatments on a patient suffering from nerve and muscle disorders not completely understood by the medical profession itself"). Accordingly, the district court did not err in granting Mayo's motion for judgment as a matter of law on this claim.

B.

The Mattkes also claim that the district court erred by instructing the jury that the conduct of the doctors in the Mayo Clinic pathology department could not form a basis for finding that Mayo was negligent in the diagnosis, care, or treatment of Mr. Mattke. District courts have broad discretion in formulating jury instructions, and we review the instructions for an abuse of discretion. *Lighting & Power Servs., Inc. v. Roberts*, 354 F.3d 817, 819 (8th Cir. 2004). "Our review is limited to determining whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and the applicable law to a jury." *Id.* Because this is a diversity case, Minnesota law applies to the substance of the instructions, while federal law controls our review of the district court's discretion in refusing or admitting the instructions. *Bennett v. Hidden Valley Golf and Ski, Inc.*, 318 F.3d 868, 873 (8th Cir. 2003).

Minnesota law requires a plaintiff to establish four elements in a medical malpractice claim: (1) "the standard of care recognized by the medical community as applicable to the particular defendant's conduct;" (2) a departure from that standard; (3) that the defendant's departure from the standard of care was a direct cause of the plaintiff's injuries; and (4) damages. *Tousignant v. St. Louis County*, 615 N.W.2d 53, 59 (Minn. 2000). The first two of these elements generally must be established through the testimony of expert witnesses. *See, e.g., id.* at 58; *Hestbeck*, 212 N.W.2d

at 364. This is because "most medical malpractice cases involve complex issues of science or technology, requiring expert testimony to assist the jury in determining liability." *Tousignant*, 615 N.W.2d at 58.

Under Minnesota law, a physician who is to give an expert opinion about the quality of care given by a defendant doctor must "make a substantial showing of qualification in the particular field of inquiry." *Swanson v. Chatterton*, 160 N.W.2d 662, 669 (Minn. 1968); *see also Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 427 (Minn. 2002). It is generally required that expert physician witnesses have an understanding of what would usually and customarily be done by a doctor in a situation similar to that confronted by the defendant physician. *Lundgren v. Eustermann*, 370 N.W.2d 877, 880 (Minn. 1985). The Mattkes, however, did not present expert testimony regarding either the appropriate standard of care for the pathology department, or a departure from such a standard.

Dr. Donald Burrows, the Mattkes' only expert witness, testified that he was not a pathologist, though he had contacts with pathologists and pathology laboratories in the course of his duties as a physician. Dr. Burrows' primary areas of practice are sleep disorders and pulmonology. He had never heard of the phenomenon of cellular floaters until he began work on this case. He further testified that he was not familiar with the cellular floaters study introduced by Mayo Clinic, did not know how often cellular floaters occurred, and did not know what measures modern pathology laboratories take to avoid floaters. We do not believe, therefore, that Dr. Burrows could be considered an expert under Minnesota law for purposes of commenting on the actions of Mayo Clinic's pathology department or the phenomenon of cellular floaters. *See Swanson*, 160 N.W.2d at 666-69 (holding trial court properly excluded testimony of internist who testified regarding fractures, because expert was not an orthopedist, and did not have experience treating fractures like the one at issue in the case). And even assuming *arguendo* that Dr. Burrows could qualify as such an

expert, his testimony did not set forth a standard of care or a departure from such standard by the Mayo pathology department.

The Mattkes argue that testimony at trial by Mayo Clinic's witnesses established a standard of care. Assuming that this is the case, all of Mayo's witnesses testified that no malpractice occurred. Since Dr. Burrows was the Mattkes' only expert witness, no expert called by either the Mattkes or Mayo Clinic testified as to a breach of a standard of care by the Mayo pathology department. In order to prove medical negligence in a malpractice action, a plaintiff "must offer expert medical testimony both to state the standard of medical care and the treatment recognized by the medical community *and to establish that the defendant physician in fact departed from that standard[.]"* *Silver v. Redleaf*, 194 N.W.2d 271, 272 (Minn. 1972) (emphasis added); *see also Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn. 1990); *Shea v. Esensten*, 622 N.W.2d 130, 135 (Minn. Ct. App. 2001).

The exception to this rule is that "expert testimony is not necessary where the matters to be proved fall within an area of common knowledge and developing lay comprehension of medical techniques . . . ." *Hestbeck*, 212 N.W.2d at 364. As discussed above in the context of appellants' *res ipsa loquitur* claim, we do not believe that this is a situation falling into such an area. This conclusion is especially strong in light of Dr. Burrows' testimony that he was not familiar with the phenomenon of cellular floaters prior to the trial. If a licensed and practicing physician is not aware of a particular medical phenomenon, we cannot expect it to be something with which a reasonable layperson would be familiar. The actions of the pathology department here involve facts that would not be within "an area of common knowledge and developing lay comprehension of medical techniques." *Hestbeck*, 212 N.W.2d at 364. Minnesota law therefore requires that expert testimony be presented regarding a departure from an established standard of care before a negligence claim based on the actions of Mayo Clinic's pathology laboratory could be considered by

the jury. There was no such evidence, and the district court's jury instructions were a correct statement of Minnesota law in light of the evidence in this case.

For the foregoing reasons, the judgment of the district court is affirmed.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT.
BY: Michael E. Gans